Good morning, Your Honors. Katherine Young from the Federal Public Defender's Office for the Appellant, Brent Chew. I'd like to reserve a few minutes of my time for rebuttal if possible. Mr. Chew is here appealing his sentence for possession of unauthorized access devices and aggravated identity theft. The first question I'd like to address today is whether the District Court erred in calculating the sentencing guideline range by imposing enhancements for amount of loss and number of victims. That resulted in a 75-month sentence for an offense that lasted a few weeks and caused $9 in loss. The first thing I want to turn to is the burden of proof that the District Court should have applied. In my 28-J letter, I mentioned a case that this Court has recently decided, the Vallee decision, where the Court said that the clear and convincing evidence standard should be applied, where only the final two Jordan factors favor the defense. In other words, where the offense level is raised by more than four and the sentencing guideline range is more than doubled. That happened in this case. The actual loss generated an offense level of four and a sentencing guideline range of 6-12 months. With the spreadsheet information added, the offense level increased to 17 and the sentencing guideline range to 51-63 months. But I know the Ninth Circuit has been a bit, hasn't been clear on this, but there's also a lot of cases that say that if it relates to a charged conduct as opposed to an uncharged conduct, then you don't use a clear and convincing evidence. So what do we make of a long line of cases in the Ninth Circuit that makes that distinction between charged conduct versus uncharged conduct? I think that's part of the Jordan analysis. There are six Jordan factors, and that's one of the Jordan factors. But the last two Jordan factors have consistently been used to say that even if you just meet these two, we will apply the clear and convincing evidence standard. And I think that's the impact of the decision in Vallee, that we're going to go with this long line of authorities. Even though there are six Jordan factors, we're going to say if you meet the last two, we will apply the clear and convincing evidence standard. And Jordan also says it's plain error. The application of incorrect standard of proof to enhancements with disproportionate impact was error that is plain. So it's plain error in this case. But we're also contending that under any standard, the use of the spreadsheet information in this case was erroneous. And we're relying primarily on the Agneso decision, where the court held that unauthorized access devices must be usable. What do you make of the statement in Agneso, or however it's pronounced, that the usability quote-unquote may be self-evident for certain types of things like credit card numbers? No, you're right, Your Honor. But the Agneso case does apply to an expired credit card numbers. So even though they make that statement, the whole case is about expired credit card numbers. Do we know whether any of the credit card numbers in this case were expired? We don't know. But we do know. That's a difference from Agneso, right? It is. But the problem is that in this case, the government had the spreadsheet for years and did nothing to verify any of the numbers. We know from some of the evidence that's presented, some of the victims who were contacted, that their identities had been stolen in some cases 15 years ago, in some cases 10 years ago, in some cases 5 years ago. You could probably infer from that that some of the credit card numbers were... Yes. I mean, I think that this is a spreadsheet that had been circulating for years, if not decades. ...canceled due to fraud. Canceled, yeah. I'm sorry. Or canceled due to, I mean, due to fraud. Yes. Exactly. In some of these cases, there had been reports to the police. So obviously these credit cards had been canceled. And there was no evidence to prove usability. So now, whose burden... So the burden's on the government to prove usability. Yes, Your Honor. You don't have... The defendant doesn't have any burden of coming forward and pointing out that some of these cards had to, of necessity, have been expired. I mean, most credit card terms are, like, one to two years. I mean, you didn't have any burden to come forward with that to point out the problem with some of these cards? Well, I think it's their burden to prove it. If they met some portion of their burden, then we might have the burden to respond. But our argument is they didn't even meet any burden to prove that these were usable. So I think the question, though, is whether you have to do something to kind of trigger their duty to prove it. I think all we have to do is object, which clearly the defense did in this case. And once there's objection, then they have to come forward with their burden. Is the analysis different for bank accounts as opposed to credit cards? I don't think so. I don't think that any of the cases say it is different. Because you don't, you know, credit cards, they expire. Bank accounts typically don't. No, but in this case, when you've got a spreadsheet that's been circulating for years, presumably, as Judge Wardlaw said, these accounts have been closed because people have been defrauded. So what would the government have to do? Here, there were, you know, a spreadsheet with 3,000 bank accounts or credit card numbers. Would the government then have to, for each single one, figure out which credit card company or bank and verify each one? In some cases, I think there's been a random sampling. And the court might apply a multiplier based upon a random sample. I mean, you could, the district court can do whatever it thinks is reasonable, I assume, to try to find out, when you've got 3,000, how you allocate usability to them. In this case, nothing was done to prove that any of them were usable. But also, I'm sorry. Yeah, but your client admitted that he had the spreadsheet with identifiable information, with personal information. Then one of the agents also checked Social Security numbers with respect to these people. Isn't that enough where the defendant admits that he had this information and they did some due diligence in the government here? I mean, isn't that enough here? He admitted that he had identifying information. He didn't admit that any of the numbers were current. The government, and I'm sorry, what was your other issue? Social Security. Social Security numbers. One of the agents had verified some of the Social Security numbers. The Social Security numbers were separate. Those the court did not include. There were three categories of information in the spreadsheets that the government argued should be counted. The Social Security numbers, the bank accounts, and the credit card numbers. The court did not count Social Security numbers. Those the government did verify, but those the court declined to add to the intended loss. And with respect to what my client said, he said that he had the spreadsheet. He didn't say that he made purchases from the spreadsheet. He said that he had been given the spreadsheet with the intent that he was to use it.  Originally, he said, it was given to me with the intent that I was to use it. That became somewhat morphed into something more of an admission. But what he said, there's no evidence that he actually used it. And in my brief I went through, the government said, well, he used all these other pieces of information. And I went through and looked at the source of all the information he used, and it was not from the spreadsheet. It was from handwritten numbers that were separate that he had, or from other people that had given him like a card that had been re-encoded or something. So I looked through in detail in my brief, showing that all the information he used was not from the spreadsheet. The victim impact statements tell us that the spreadsheet information was probably stale because it came from decades ago. And what about the stolen mail, the enhancement for the stolen mail that went to the number of victims? We argue that there are a lot of moving pieces on the stolen mail enhancement. Our first argument is there's eight stolen mail victims. We argue that they shouldn't have been included because this was an identity theft case. Then if you include them, you've got eight victims and you still have to get to ten to justify the enhancement. And the only way you do that is by adding two sets of victims that the sentencing guidelines tells us have to be applied in the alternative, or. So we're arguing that we can't get to ten victims. And I see I've only got a minute and a half left, so if there are no further questions, I'll reserve the remainder of my time. All right, thank you. Thank you. Good morning, Your Honors. May it please the Court, my name is Catherine Onn and I represent the United States. I'd like to begin by focusing on the first argument raised by defense counsel, which is the guidelines calculation. This Court's question earlier was precisely on point. This Court properly applied a preponderance of the evidence standard because even assuming clear and convincing survived speckles, the enhancements were based on defendants' charged and convicted conduct. This would not trigger the due process concerns raised in Jordan, Restrepo or Valencia, Riley, or the other cases of this Court's prior precedent. Defendant pled guilty to possessing 15 or more access devices and aggravated identity theft. And the question considered by the Court at sentencing was the scope of that conduct, which as discussed in Riley, falls within the preponderance of the evidence standard. This is made clear when you look at the facts of the case, which are essentially quite simple and have been admitted to by a defendant either on the factual basis of his open plea or the Mirandized recorded interview and were corroborated by text messages found on and data from defendants' digital devices. Put simply, defendant used personal identifying information, or PII, obtained through profiles, stolen mail, and stolen checks to open new or access existing accounts. But he didn't use any of the accounts or any of the information on the spreadsheet to do so. The spreadsheet information, I believe in the Mirandized interview, and this can be found in ER 722 and 723, he said he obtained it approximately a week prior, which was consistent with forensic analysis, in order to open new accounts and use that information. What we did know is that he used information from his- Did he say that, that he obtained it with some intent? Yes. Yes, Your Honor. And that's actually a key distinction from Onyoso, where unlike in Onyoso, the account information in the spreadsheets was married up with other PII that defendant admitted that he possessed with intent to use them in order to open new accounts and obtain cash. And this is corroborated by the use of PII in defendant's text messages. I'd also like to point out, and this is summarized in ER 220, which is the government's sentencing position, where we- When you say PII, are you saying personal- Personally identifying information. Yeah. Yes, Your Honor. Don't use those acronyms. They're very confusing. Yes, Your Honor. I'll continue to use the full phrase. If you look at ER 220, which provides a summary of the sources of the different access devices raised in the government's argument and raised in the PSR, the access devices from the spreadsheet were actually bank accounts. There are 727 bank accounts found from the spreadsheet, and defense counsel himself actually urged the court to consider just those bank accounts during the sentencing hearing. I think you're kind of taking that a little bit out of context. So what he says is that if the court isn't inclined to use the actual loss figure and if the court's going to use a number that's greater than that, then it would make sense that they use the 727 bank account numbers because that can be tied to a bank account, again, making a huge leap, assuming those bank account numbers were valid. I mean, that's not an admission that those things are okay. He's making an argument in the alternative. Understood. To the point, though, raised by defense counsel, is the account numbers from the spreadsheet were bank accounts. The credit card numbers used in the PSRs were actually from images from defendant's cell phone which contained images of chocolate. Wait, 307 credit card numbers were not in the Excel spreadsheet? So in ER 220, there were 307 credit card numbers. 273 of them were from defendant's cell phone images, which included images of track data and spreadsheet data. Was he saying it's on the basis of that? Yes. So those 273 were from defendant's cell phone images and 34 were from handwritten notes found in defendant's backpack, which the defendant actually did admit to using. But nobody, so, I mean, the agent admitted at the hearing that nothing had been done to try to verify even one of those, right? That is not correct, actually. He excluded any facially invalid bank account numbers from this profile. I'm talking about the credit card numbers. The agent did not say that he did nothing to verify. He actually did look at the credit card numbers, I believe, and excluded those that were obviously invalid. But what was the evidence that these access, what was the evidence that they were usable that the government presented? Well, so, which is, I agree that is the precise point. In Onyoso. It is the issue. Yes, yes, exactly. So in Onyoso, the question is whether or not, well, A, whether or not they were facially valid, which is actually true in this case, but whether they were actually usable. I mean, sitting here, I don't know whether those numbers were facially valid or usable in any way. I mean, what was the evidence? Well, we do know that they were actually usable because they were possessed with other PII. So in Onyoso, there was no connection. So if somebody's got my expired credit card number and they also have my name and my Social Security number and my address and my phone number, that expired credit card number is good because it's possessed along with my other personal identifying information? That is potentially possible. So in Onyoso, there was no connection. But does that even meet the preponderance standard that something's potentially possible? Does that even meet the lower standard? I withdraw my potentially possible. I would say that it is actually possible. And in this case, we know that 1,666 of those Social Security numbers matched the names and the dates of birth of the individuals they were associated with. We know that the defendant used. Okay, but he wasn't sentenced on the basis of the Social Security numbers. He was sentenced on the basis of the bank account numbers and the credit card numbers and two debit card numbers. Yes, Your Honor. But the definition of access device is a number that can be used alone or in conjunction with another access device. So the bank account itself could be an access device. But it still has to be capable of obtaining money, goods, services, or anything of value. Yes, Your Honor. And what was the evidence of that? It was buried with names, dates of birth, Social Security numbers, addresses, and in some cases, federal tax ID numbers. And we do know that the names, dates of birth, and Social Security numbers belong to real people, and they all matched. If the card's been expired or canceled – I mean, I've gone through this a lot personally recently. Every time I go to an airport, my cards end up being stolen, and I'm canceling them. I'm getting calls immediately. So we know that happens very quickly, and these are very old, old data. It can't be used if it's expired or canceled. There is no evidence, actually, that the data was old. We do know that victims who have been victimized once can be victimized again. That's indicated in the victim statements themselves. Right, but you seem to be saying that the fact that the credit card number, which we don't know whether it's expired or unexpired, is combined with other identifying information like name, Social Security number, address, phone number, whatever, that's enough to say that it's usable. That makes no sense. I have a credit card that got canceled by Chase, you know, let's say three years ago because somebody used it. That's a credit card number. If somebody had a spreadsheet that had my name, my right name, my right Social Security number, which hasn't changed, my right address, which hasn't changed, my right phone number, which hasn't changed, and an expired Social Security number, it sounds like you're saying that's still a usable number for purposes of the sentencing guideline. If that's what you're saying, it doesn't make any sense to me. Well, there's an assumption in Your Honor's question that is simply not in the record, which is that these credit cards were actually expired. So we're talking about assumptions on something where the government has the burden of proof, so you're assuming that it isn't expired. Well, the case agent stated in the record that they were facially valid. What does that mean? What does that mean? That means that they, well, the spreadsheets, from the spreadsheet point of view, the numbers matched what would normally be considered for a bank account number. Okay, so let me just ask it flat out. Is there anything in the record anywhere that suggests that the government, the agent, the case agent, the U.S. Attorney's Office, anybody, checked out even one of these credit card numbers to see at the time of the sentencing or the time of the offense that they were still valid? Well, the actual credit card. Anywhere in the record? And if so, tell me where.  had expiration dates with them, and that was submitted to the court. That was also provided to defense as part of discovery. More than one way a credit card can be not valid besides expiration. The fact that you're not answering my question directly kind of suggests the answer. The evidence that was provided to the court, and it's not stated in the record, it's not stated in the hearing transcript, but the actual credit card. Wait a second. You can't start talking about stuff that's not in the record. Well, we submitted disks and images to the court that the disk itself was not provided in the record. I would just note that the case agent reviewed the data, excluded everything that was not determined to be facially valid, and based upon Onyosa's... Facially valid makes no sense in this context. I mean, it just doesn't. I mean, I know there's a lot of credit card numbers in here, and I don't know that anybody would suggest that the government has to verify every one of them, but I mean, I've had it happen in front of me where they say, okay, we took a sample. We took 20 of these things. We ran them. They're valid. That wouldn't be that hard to do. I mean, the government would be able to get that information from subpoena by Chase or Bank of America, whoever it is, like in a heartbeat. Well, the government did, in fact, verify 1,666 of the profiles that were in the spreadsheet, used that information to determine, to look at the bank accounts, and, in fact, under this court's unpublished opinion in Jackson... I'm talking about the credit card numbers. The spreadsheets had bank account numbers, Your Honor. I understand. And this court, first of all, can affirm, based upon any fact in the record, as established in Nichols, and the 727 bank accounts from the spreadsheets alone would suffice for the 12-level enhancement. Are you retreating from your original argument, asking us to affirm on another basis now? No. I'm saying that we don't believe that there was any error as to the court's calculation of the loss enhancement, but regardless of that, this court could also affirm on any record. This could include the 727 bank account numbers. Are we supposed to go coming through this record and make an independent determination of what we think might be valid or not valid? I'm sorry, Your Honor. Could you repeat that? Do you want us to come through this record and go through these things and make a determination about what might be valid, what might be usable, and what might not be usable? No, Your Honor. The record itself notes the 1,666 social security numbers plus the 2 from the handwritten notes were verified. The definition of access device includes numbers that can be used alone or in conjunction with others. Was he sentenced on that basis? He was sentenced on the basis that the spreadsheet numbers and the handwritten notes which the defendant admitted to using had access devices and that those access devices were calculated with the $500 floor as the loss to develop the loss number. However, even if this court were, for example, to think that the bank account numbers alone would not be sufficient, that is not actually required under the definition of access device. It's the number alone or in conjunction with another. In Onyoso, there was no evidence that the defendant used those account numbers which were expired with other personal identifying information. That is completely different from the case here where the defendant repeatedly admitted both in his recorded interview as well as in the factual basis first plea to using information in conjunction with each other, therefore meeting the definition of access device. All right, counsel, you're well over. Yes, Your Honor. Thank you. Thank you. I just want to briefly respond to a few points that the prosecutor made. One of the things she referred to is the 273 cell phone images of credit card numbers. Though he transferred information apparently or the same information was on the laptop and the cell phone, it was from the same source. So it had the same defects as the information on the laptop. In other words, that it was not used. There was no evidence of validity. She also referred to the fact that the agent checked to make sure the numbers were facially valid. I think all he did was check to make sure they had 16 digits as credit card numbers do. And then she also referred to the handwritten notes. Wait, one question. She said he also looked to see the expiration dates. Was that data in there? That's what I was just getting to. She referred to the handwritten notes having expiration dates. The handwritten notes is another subset of information that he had. There are only 34 numbers in the handwritten notes, and that's a separate thing. In fact, some of the information that he used was from the handwritten notes. Those are from another source than the spreadsheets. And the 34 numbers, you could use those 34 numbers because he did use some of those. They're from a different source. Would it be proper to use the 34 number and multiply that by 500 to get to the loss increase? It's more valid to use that number because he did use some of those numbers in the handwritten notes, and they're from a different source. But 34 times 500 doesn't get you to a 14-level increase. I think it's only a 4-level increase. And so the fact that the handwritten notes had expiration dates or were usable or something does not say anything about the spreadsheets because they were from an entirely different source. I only have eight seconds left, so unless there are any questions. Thank you. All right. Thank you very much, counsel. U.S. v. Chu is submitted.
judges: Wardlaw, Kennelly, Lee